**Dawn FINCH, et al., Plaintiffs,**

v.

**THOMAS ASPHALT PAVING CO., et al., Defendants.**

**No. 5:01CV2655.**

United States District Court,
N.D. Ohio,
Eastern Division.

June 25, 2002.

Gretchen A. Holderman, Richard G. Lillie, Lillie & Holderman, Cleveland, OH, for Dawn Finch, Plaintiff.

Gregory H. Collins, Davis & Young, Akron, OH, for Thomas Asphalt Paving Co., Defendant.

Mark L. Schumacher, Freund, Freeze & Arnold, Dayton, OH, for BOMAG GmbH & Co. OHG, United Dominion Industries Limited, Compaction American, Inc., Defendants.

## MEMORANDUM OPINION AND ORDER

BAUGHMAN, United States Magistrate Judge.

### Introduction

The parties have consented to the jurisdiction of the magistrate judge.[1] The Court currently has before it the motion of defendants BOMAG, United Dominion Industries Limited, and Compaction America, Inc. to stay proceedings in deference to parallel proceedings in state court.[2] Plaintiffs filed a supplemental brief in opposition[3] and defendants filed a supplemental response in support.[4]

This case arises out of Timothy L. Finch, Sr.'s death while operating the 1987 BOMAG 2–ton Vibratory Asphalt Roller as an employee of Thomas Asphalt Paving Company. Dawn Finch, as personal representative of the decedent and executrix of the estate of the deceased, claims that because of the action or inaction of the defendants, the decedent sustained extreme pain and suffering, and death. Dawn Finch has asserted nine products liability counts against the moving defendants.[5]

The motion for stay presents one issue for decision:

Generally the pendency of parallel actions in state and federal court does not prevent the federal court from exercising its jurisdiction. In limited, exceptional circumstances, considerations of judicial economy and federal-state comity may justify the federal court's abstention. Here the same claims pend before this Court and the Portage County Court of Common Pleas. Do exceptional circumstances exist supporting abstention?

A careful weighing of the factors set forth by the Supreme Court of the United States in several decisions requires this Court to conclude that in this case, abstention in deference to the parallel proceedings in state court is not appropriate. Therefore, defendants' motion for stay must be denied.

### Facts

On or about November 22, 2000, while operating the 1987 BOMAG 2–ton Vibratory Asphalt Roller, the roller pitched and rolled over on decedent, Timothy L. Finch, Sr., causing death. The subject

1.  ECF # 29.

2.  ECF # 18.

3.  ECF # 31.

4.  ECF # 32.

5.  ECF # 1.

BOMAG 2–ton Vibratory Asphalt Roller was allegedly designed and manufactured by defendant BOMAG, which is owned by defendant United Dominion, distributed or supplied by defendant Compaction, and sold or leased to Thomas Asphalt Paving Company.

Dawn Finch, an Ohio resident and the personal representative of the decedent, filed a wrongful death action asserting products liability and negligence claims in the Court of Common Pleas of Portage County, Ohio on November 22, 2000. A year later, on November 21, 2001, Finch filed a parallel claim in the District Court for the Northern District of Ohio, which joined as defendants Thomas Asphalt Paving, an Ohio corporation, and the moving defendants.[6] Before any of the defendants moved or pled in response to that complaint, Finch filed an amended complaint that dropped Thomas Asphalt as a defendant,[7] thus establishing diversity. On the day following the filing of the amended complaint, defendants BOMAG, Compaction, and United Dominion filed a motion to dismiss the complaint or, alternatively, to stay proceedings.[8] Thereafter, Thomas Asphalt joined in that motion.[9] Eventually, BOMAG, Compaction, and United Dominion filed an answer to the amended complaint[10] and moved for a transfer of the case to the Akron division of this Court and to stay proceedings.[11]

Prior to the consent to magistrate judge's jurisdiction, District Judge Solomon Oliver, Jr. denied the initial motion to dismiss[12] as moot in light of the filing of the amended complaint.[13] The Court, therefore, denied that motion as moot. Following the consent to jurisdiction, the magistrate judge issued an order holding that no legal basis exists for transferring this case to the Akron division and ordered supplemental briefing on the pending motion to stay proceedings.[14] The parties have filed the supplemental briefing ordered.[15]

### Analysis

**1. Abstention under the *Colorado River* doctrine**

As recognized by the Supreme Court of the United States in *Colorado River Water Conservation District v. United States*,[16] as between state and federal courts, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction."[17] Abstention from federal jurisdiction is the exception, not the rule, because there is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."[18] Circumstances appropriate for abstention have been confined to three general categories: (1) cases presenting a federal constitutional issue, which may be mooted or presented in a different posture by state

6. ECF # 29.

7. ECF # 5.

8. ECF # 6.

9. ECF # 9.

10. ECF # 17.

11. ECF # 18.

12. ECF # 6.

13. ECF # 28. The magistrate judge later denied Thomas Asphalt's motion to dismiss as moot. ECF # 35.

14. ECF # 30.

15. ECF # 31; ECF # 32.

16. 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

17. *Id.* at 817, 96 S.Ct. 1236.

18. *Id.*

court determination of pertinent state law; (2) cases where difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar have been presented; and (3) cases where, absent bad faith, harassment or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings.[19]

If, however, a case does not fall into one of these categories, as this case does not, the United States Supreme Court has identified eight factors, four in *Colorado River* and four in subsequent decisions, that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of the state court:

- whether the state court has assumed jurisdiction over any res or property;
- whether the federal forum is less convenient to the parties;
- avoidance of piecemeal litigation;
- the order in which the jurisdiction was obtained;
- whether the source of governing law is state or federal;
- the adequacy of the state court action to protect the federal plaintiff's rights;
- the relative progress of the state and federal proceedings; and
- the presence or absence of concurrent jurisdiction.[20]

When considering these factors, "the decision whether to dismiss a federal action because of state court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."[21] "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required."[22] The Supreme Court has emphasized that "our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice . . . to justify the surrender of that jurisdiction."[23]

**2. Consideration of the eight abstention factors.**

*a. Has the state court assumed jurisdiction over any res or property?*

Both parties agree that the state court has not assumed jurisdiction over any res or property. The Sixth Circuit noted in *Larry Romine & Sonia Mitelman v. Compuserve Corp.*, that where no property is at issue, the first factor is inapposite and supports exercising jurisdiction.[24] Thus, the first factor favors denying the motion to abstain.

*b. Is the federal forum less convenient to the parties?*

The federal forum is not any less convenient for the parties than the state forum. This factor relates to "geographical consid-

---

**19.** *Colorado River,* 424 U.S. at 814–16, 96 S.Ct. 1236.

**20.** *PaineWebber, Inc. v. Alfred M. Cohen,* 276 F.3d 197, 207 (6th Cir.2001).

**21.** *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

**22.** *Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236.

**23.** *PaineWebber,* 276 F.3d at 208 (quoting *Moses,* 460 U.S. at 25–26, 103 S.Ct. 927).

**24.** 160 F.3d 337, 341 (6th Cir.1998).

erations, not to the relative jurisdictional scope of state versus federal courts." [25] In *Colorado River*, the 300 mile distance between the district court in Denver and the relevant state court was a significant factor in supporting abstention.[26] By contrast, the court in *Romine* concluded that the federal forum was not less convenient where the state and federal courthouses were located in the same city.[27] The state and federal courthouses in this case are located 40 miles apart, which is not a significant distance to render either court less convenient than the other. For example, in *Travelers Indemnity Co. v. Madonna*, the Ninth Circuit held that a distance of 200 miles between the state and federal courthouses is a fair distance but not one sufficiently great so as to weigh in favor of abstention.[28] A distance of 40 miles is considerably less than 200 and it does not rise to the level of significance necessary to overcome the heavily weighted balance in favor of jurisdiction.

In addition, the defendants argue that it is more convenient to try this case in the Portage County Court of Common Pleas because the plaintiffs are from Portage county, the decedent's employer, Thomas Asphalt Paving Company, has its principal place of business in Portage County, and the accident occurred in Portage County. The defendants, however, have not made an effective argument to support abstention on this factor because the plaintiffs are against abstention, and Thomas Asphalt Paving Company is not a defendant in this federal case. This factor, thus, supports the exercise of federal jurisdiction.

### c. Avoidance of piecemeal litigation

Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results.[29] In this case, as in *Romine*, where the state and federal courts are determining the same issue, there is a high threat of piecemeal litigation. However, "concurrent parallel actions alone do not present the danger of piecemeal litigation needed in order to grant abstention," because the rule is that "the pendency of an action in the state court is no bar to the proceedings concerning the same matter in the federal court having jurisdiction." [30]

In determining this factor, it must be considered whether exceptional circumstances exist which justify concern for piecemeal litigation. In *Colorado River*, the court found exceptional circumstances that warranted abstention. In particular, the McCarran Amendment created a clear federal policy of avoiding piecemeal adjudication of water rights in a river system. Unlike *Colorado River*, there is no clear federal policy in this case that requires the federal court to abstain. In addition, doubts as to whether a particular factor exists in the abstention determination should be resolved against a stay, for "only the clearest of justifications will warrant abstention." [31] Accordingly, this factor

**25.** *PaineWebber*, 276 F.3d at 207.

**26.** *Colorado River*, 424 U.S. at 820, 96 S.Ct. 1236 (1976).

**27.** *Romine*, 160 F.3d at 337 (6th Cir.1998).

**28.** 914 F.2d 1364, 1368 (9th Cir.1990). *See also, Focus Radio, Inc. v. Summit Radio, Inc.*, 853 F.Supp. 252, 256 (noting that a 200 mile distance is easily accessible by air and highway).

**29.** *Romine*, 160 F.3d at 341.

**30.** *Focus Radio*, 853 F.Supp. at 256 (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236).

**31.** *Colorado River*, 424 U.S. at 819, 96 S.Ct. 1236.

weighs in favor of continued exercise of federal jurisdiction.

#### d. Which court first obtained jurisdiction?

Applying the fourth factor to this case presents the strongest basis for abstaining because there is no dispute that Finch filed her complaint in state court before she filed her complaint in federal court. Finch filed the complaint in state court on November 22, 2000, and filed the complaint in federal court on November 21, 2001. However, the Supreme Court notes that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." [32]

*Colorado River* illustrates this point well. There, the federal suit was actually filed first, but nevertheless, the court granted dismissal because of "the apparent absence of any proceeding in the District Court, other than the filing of the complaint, prior to the motion to dismiss." [33] In *Moses*, the opposite was true. It was a state-court suit in which no substantial proceedings (except the abortive temporary injunction) had taken place at the time of the decision to stay. In the federal suit, by contrast, the parties had taken most of the steps necessary to a resolution of the arbitrability issue. [34]

In this case, Finch filed the complaint in state court on November 22, 2000, and in federal court on November 21, 2001. BO-

MAG argues not only that there is a year difference in the filing of complaints, but that the state court has progressed far beyond that of the federal court. In particular, the state court set a trial date for October 8, 2002. The Plaintiff, nevertheless, contends that both cases are in the midst of discovery, and that neither case has moved well ahead of the other. According to the appearance and execution docket of the Common Pleas Court of Portage County, on September 10, 2001, that court ordered that all discovery deadlines and cutoff dates were to be extended for a period of 60 days. Thus, discovery was well underway and concluding around the same time that the complaint in federal court was just being filed. Accordingly, this factor supports BOMAG's motion for abstention.

#### e. Is the source of governing law state or federal?

State law governs the claims in this case, which are products liability claims. This factor only has influence "when substantive federal law is involved or where there exists a novel and difficult state law question." [35] In *Dobzeniecki v. Stone & Webster Engineering Corp*, plaintiff's strict products liability, breach of warranty, and negligence claims presented no novel or unique issues of state law. [36] Thus, the existence of a products liability claim, although governed by state law, does not overcome the heavy burden of the federal court to exercise its jurisdiction.

---

32.  *Moses*, 460 U.S. at 21, 103 S.Ct. 927.

33.  *Colorado River*, 424 U.S. at 819, 96 S.Ct. 1236.

34.  *Moses*, 460 U.S. at 3, 103 S.Ct. 927.

35.  *Dobzeniecki v. Stone & Webster Engineering Corp.*, 716 F.Supp. 87, 91 (E.D.N.Y.1989).

36.  *Id.See also, Focus Radio*, 853 F.Supp. at 255 (routine issues of breach of contract, fraud, conversion, and theft of property do not constitute a rare or exceptional circumstance where a district court should decline jurisdiction).

### f. Is the state court action adequate to protect federal plaintiffs' rights?

Here, neither the state nor federal forum is inadequate to protect the Finchs' rights. BOMAG argues that state court is the only forum that can address all of the claims that Finch has alleged, referring to the claim against Thomas Asphalt. However, Finch dropped Thomas Asphalt from the federal proceeding and thus, BOMAG's argument is not determinative on the adequacy of the state court. As in *Paine-Webber, Inc. v. Alfred M. Cohen,* "the fact that the state court will protect *Paine-Webber* 's rights ... does not provide the 'exceptional' circumstances necessary to justify abandoning the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.' " [37]

### g. What is the relative progress of the state and federal proceedings?

As discussed under factor four, the state court proceeding has progressed considerably further than the federal action, which weighs strongly in favor of deferring to the state court. The court in *Romine* found that the progress made in state court strongly favored abstention. That state court had entered several orders and parties began discovery, whereas federal acts remained in the initial pleadings stages.

Here, Finch filed the complaint in state court a year before filing the complaint in federal court. Discovery in state court, including the answering of interrogatories, was well under way before Finch even filed the complaint in federal court. In addition, the state court has scheduled a pretrial for October 4, 2002 and a jury trial

for October 8, 2002. In the federal court, by contrast, the parties consented to the magistrate jurisdiction on February 13, 2002, who set BOMAG's motion to stay proceedings for oral argument on June 17, 2002. Arguably, the state case has advanced well ahead of the federal case, thus supporting BOMAG's motion to abstain.

### h. The presence or absence of concurrent jurisdiction

Both the state and federal forums have jurisdiction in this suit. Pursuant to the diversity statute, 28 U.S.C. § 1332, the plaintiff obtained jurisdiction in federal court. "The presence of concurrent jurisdiction only marginally, if at all, favors abstention." [38]

### 3. Weighing of the eight abstention factors

Having discussed each of the eight factors as they relate to this case, the Court must now weigh them to determine if it should retain jurisdiction. In doing so, the Court is mindful that this decision is entrusted to its sound discretion.[39] From a practical standpoint, this means that within limits there exists a range of permissible decisions that the Court may make.

Here two relatively recent decisions of the Sixth Circuit illustrate that range— *Romine v. Compuserve Corp.*[40] and *Paine-Webber, Inc. v. Cohen.*[41] Both cases applied the same eight-factor test for abstention. In *Romine,* the District Court abstained, and the Sixth Circuit affirmed. In *PaineWebber* the District Court also

---

**37.** *PaineWebber,* 276 F.3d at 209 (quoting *Colorado River,* 424 U.S. at 817–18, 96 S.Ct. 1236).

**38.** *PaineWebber,* 276 F.3d. at 208.

**39.** *Sverdrup Corp. v. Edwardsville Cmty. Unit School Dist. No. 7, Edwardsville Bd. of Educ.,*

*James Speciale,* 125 F.3d 546, 548–49 (7th Cir.1997).

**40.** 160 F.3d 337 (6th Cir.1998).

**41.** 276 F.3d 197 (6th Cir.2001).

decided for abstention, but the Sixth Circuit reversed. In both cases, the Court of Appeals decided that the state courts had not exercised jurisdiction over a res or property[42] and that litigating in the federal forum would not pose an inconvenience.[43] Likewise, in both cases the Court found that the state courts would adequately protect the rights of the federal plaintiffs.[44] The decisions turned, therefore, on the other five factors.

*Romine* involved a class action for securities fraud. The state action, filed first, asserted claims under both the Securities Act of 1933 and Ohio's Blue Sky statute.[45] The federal action claimed under the 1933 Act only.[46] While the named plaintiffs differed in each case, the same law firm represented both, and the putative class was the same.[47] The state action had progressed much further than the federal case as of the time of the District Court's decision.[48]

While acknowledging the District Court's "unflagging obligation" to exercise its jurisdiction,[49] the Court of Appeals nevertheless upheld the abstention decision. In doing so, the Court was influenced by the problems with duplication of judicial effort caused by two competing class actions,[50] the fact that the plaintiffs had created the competition between the state and federal courts (as opposed to filing federal suit by a defendant to thwart state court jurisdiction),[51] the progress to date in the state case compared to the federal action,[52] and the federal policy favoring concurrent jurisdiction over 1933 Act claims by preventing removal of such claims initiated in state court.[53]

*PaineWebber* pitted a state court action for conversion and fraud against a federal action to compel arbitration under the Federal Arbitration Act. The state court plaintiff filed first, with *PaineWebber* bringing the federal court action two days later.[54] Here the Court of Appeals emphasized the "unflagging obligation" to exercise jurisdiction and the need for "exceptional circumstances, the clearest of justifications" to overcome that obligation.[55] It found no such exceptional circumstances existed in the case. It found compelling the strong federal policy supporting arbitration,[56] the parity in the progress of the competing actions,[57] and the fact that federal law provided the source for interpreting the arbitration clauses at issue (even though the Court acknowledged that the state court had concurrent jurisdiction over the arbitration claim).[58]

**42.** *PaineWebber,* 276 F.3d at 207; *Romine,* 160 F.3d at 341.

**43.** *PaineWebber,* 276 F.3d at 207; *Romine,* 160 F.3d at 341.

**44.** *PaineWebber,* 276 F.3d at 208; *Romine,* 160 F.3d at 342.

**45.** *Romine,* 160 F.3d at 339.

**46.** *Id.*

**47.** *Id.*

**48.** *Id.* at 342.

**49.** *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236.

**50.** *Romine,* 160 at 341.

**51.** *Id.* at 339.

**52.** *Id.* at 341–42.

**53.** *Id.* at 342.

**54.** *PaineWebber,* 276 F.3d at 207.

**55.** *Id.* at 208.

**56.** *Id.* at 207.

**57.** *Id.*

**58.** *Id.* at 208.

This case falls between *Romine* and *PaineWebber*. There is no class action to complicate the duplication of judicial effort consideration. As a practical matter, at least as to the parties in the federal action, a judgment by either this Court or the Portage County Court of Common Pleas would have res judicata effect on the identical claims pending in the other court.[59] The two courts, therefore, will not render inconsistent judgments. Although discovery has proceeded to a significant extent in the state case, the parties can use all of that discovery with equal force in the federal case.[60] And this Court has offered the parties a firm trial date on the same schedule as the trial currently set in the state court, which is apparently only tentative at this point.[61]

On the other hand, as in *Romine*, this is a competition between state and federal fora created solely by the plaintiffs, and unlike *PaineWebber*, there exists no federal policy favoring the resolution of the claims asserted in a federal court. Admittedly a single trial involving all of the defendants, including Thomas Asphalt, in state court would be preferable to a trial in federal court involving the diverse defendants and another trial in state court against Thomas Asphalt.[62]

This is perhaps a case where the factors weigh such that the Court, within its discretion, could either abstain or not abstain and still remain in the range of acceptable choices. Nevertheless, on balance, the Court concludes that the circumstances present here do no rise to the level of "exceptional circumstances, the clearest justification" necessary to overcome the obligation to exercise federal jurisdiction.

That is not to say that this Court must permit the parties to engage in a free-for-all race to judgment. In deference to the progress made to date in the state court and the current trial date set in that action, and the preference of both sides in the federal cases for "one trial, one judgment," the Court is setting a discovery and trial schedule in this case that will afford the parties and the state court a reasonable opportunity to achieve a global resolution of the claims pending in that forum before the federal case proceeds to a decision point. To avoid unnecessary duplication of effort, this Court hereby declares that any discovery taken in the state court case is useable in this action to the same extent as in the state case, unless such use is expressly prohibited by federal rule or statute.

The Court will issue separate orders amending the case management plan and setting dates and procedures for the settlement conference, final pretrial, and trial.

### Conclusion

Because exceptional circumstances do not exist to overcome the Court's "unflagging obligation" to exercise its jurisdiction, the motion to stay proceedings in this case is hereby denied.

IT IS SO ORDERED.

**59.** *Gau Shan Co., v. Bankers Trust Co.,* 956 F.2d 1349, 1352 (6th Cir.1992)(citing *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984)).

**60.** ECF # 37, Transcript of the Oral Argument of June 17, 2002 ("06/17/02 Tr.") at 14.

**61.** *Id.* at 9–10.

**62.** *Id.* at 10.